[Cite as *Myles v. Myles*, 2026-Ohio-2968.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|                          |   |                                  |
|--------------------------|---|----------------------------------|
| SONIA JACKSON MYLES,     | : |                                  |
|     Appellant,           | : | CASE NO. CA2025-10-095           |
|                          | : | OPINION AND                      |
| vs.                      | : | JUDGMENT ENTRY                   |
|                          |   | 7/31/2026                        |
| KENNETH A. MYLES,        | : |                                  |
|     Appellee.            | : |                                  |
|                          | : |                                  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 25 DR 45145

Kenneth A. Myles, pro se.

Taft Stettinius & Hollister LLP, and Carl A. Murway, and Kathryn E. Meloni, for appellant.

**O P I N I O N**

**HENDRICKSON, J.**

{¶ 1}   Appellant, Sonia Jackson Myles ("Wife"), appeals from the decree of divorce issued by the Warren County Court of Common Pleas, Domestic Relations

Division, which terminated her marriage to appellant, Kenneth A. Myles ("Husband").[1] Wife appeals that portion of the divorce decree that awarded spousal support to Husband. Because Wife was not given reasonable notice or the opportunity to be heard in a meaningful manner on the issue of spousal support, we reverse the portion of the court's judgment and remand the matter for an evidentiary hearing on the contested issue of spousal support. In all other respects, the judgment of the trial court is affirmed.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2} The parties were married on August 28, 1993 in Michigan and had two children born issue of their marriage, both of whom are now adults. In 2006, the parties moved to Warren County, Ohio. On January 15, 2025, Wife filed a complaint for divorce, contending that she and Husband were incompatible. Wife sought an equitable division of marital property. That same day, the trial court issued a standard mandatory disclosure order to both parties, directing them to exchange documentation, mostly financial in nature, within 45 days of the order. Wife complied with the trial court's order; Husband did not. Husband also failed to file an answer.

{¶ 3} A scheduling conference was held on March 21, 2025 before a magistrate. At that time, Husband appeared before the court pro se. Husband indicated that he did not wish to get divorced and that he did not agree with the division of marital assets and debts proposed by Wife. The magistrate indicated it would continue the matter to allow Husband to file an answer to the complaint. However, the magistrate heard testimony from Wife and Husband regarding Wife's request to have Husband vacate the marital home, located in Mason, Warren County, Ohio.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

{¶ 4}    At the conclusion of the March 21, 2025 hearing, the magistrate issued an order giving Husband until April 11, 2025 to file an answer in the case. The court extended the deadline for mandatory disclosures until April 21, 2025. Wife's request to have Husband vacate the marital residence was denied. The magistrate ordered that the "parties shall maintain the financial status quo regarding the payment of household expenses, until further order of the Court." A status conference was scheduled for May 12, 2025.

{¶ 5}    Husband failed to file an answer or the mandatory disclosures by the extended deadlines. On April 28, 2025, Wife moved to convert the May 12, 2025 status conference to a noncontested divorce hearing. The trial court granted Wife's motion that same day. Hours later, Husband filed an Affidavit of Income, Expenses & Property, and Financial Disclosure.

{¶ 6}    On May 12, 2025, Wife, with counsel, and Husband, pro se, appeared before a magistrate for the final noncontested divorce hearing. The magistrate indicated it had set aside only 30 minutes for the proceeding and permitted limited testimony from Wife and Husband. Wife presented 30 exhibits to the court for consideration, all of which were accepted into evidence. The exhibits included Wife's financial affidavit of income, expenses, and property; evidence of the mortgages on the parties' marital home; information about the parties' bank accounts, vehicles, credit card debts, student loan debt, and tax debt; federal tax returns for the years 2021, 2022, and 2023; a 2017 Separation Agreement signed by the parties and filed in a prior Warren County Domestic Relations case; ring camera videos taken from the marital home; and text messages exchanged between the parties. Husband did not introduce any exhibits into evidence.

{¶ 7}    Wife proceeded to testify that she and Husband were married on August 28, 1993, and have two adult children. Wife was seeking a divorce on the grounds that she

- 3 -

and Husband were incompatible. Wife briefly discussed the parties' assets and debts as follows.

{¶ 8} In 2006, the parties purchased a home in Mason, Ohio. Wife testified she stopped residing in the marital residence after discovering Husband in the home with another woman, but she wished to keep the home following the divorce. Wife indicated there were two mortgages on the property, an approximately $670,000 mortgage with ShellPoint Mortgage Servicing and an approximately $18,000 home equity line of credit with Wells Fargo. Wife drove a leased vehicle, a Porsche Cayenne, that has a monthly payment of over $1,500. Husband had previously driven a leased Porsche. Wife had extended the lease "a couple of months to be kind to him . . . [but] the (inaudible) extension just ended." The car was turned in on May 9, 2025.

{¶ 9} Wife testified she was 57 years old and in good physical health. However, she described significant emotional and mental distress as a result of Husband's conduct and relationship with another woman. Wife testified that she completed undergraduate and graduate studies in marketing at Florida A&M. Husband did not pay for any of her education. Husband, who was 62 years old, graduated from high school and attended college at Michigan State but did not complete his degree. Though Husband was not working at the time of the hearing, Wife did not think Husband had any health issues that would prevent him from working.

{¶ 10} Wife testified that she runs her own business and is a public speaker, author, and consultant. Her Affidavit of Income Expenses & Property and Financial Disclosure and Federal Tax Returns indicated that in 2023, she had an income of nearly $732,000. In the two years prior to that, Wife earned around $670,000. Prior to running her own business, Wife was employed for 13 years by Ford Motor Company in Michigan, before moving to Boston to work for Gillette in 2003. In 2006, when Proctor & Gamble

acquired Gillette, she moved to Cincinnati to lead the integration. She eventually left Proctor & Gamble to run her own business.

{¶ 11} Wife explained that neither she nor Husband have any retirement, investment accounts, money market accounts, or savings accounts. Wife's retirement funds were pulled out so she could start her own business and pay for items for the marital home. Husband withdrew his retirement funds in 2022. Wife explained that her business income is used to service debt—mortgage debt, credit card debt, tax debt, and a student loan.

{¶ 12} Wife testified that when discussing the divorce, she and Husband had texted one another about spousal support. Husband had indicated that he was not seeking spousal support or alimony. She produced Exhibit 28, in which she and Husband exchanged the following messages:

> [Husband]: I am not asking you to stop the proceedings but consider giving me 6 months to secure employment, get some insurance, a place and transportation of my own. *I don't want any alimony, etc. from you. You have already done more than enough.*
>
> . . .
>
> [Wife]: The judge will make me pay alimony. Just as the other judge said before. That is going to happen. So I have to be a nomad for 6 months and you get to have your cigar parties and friends over? I have nowhere to go to my own home. This is unbelievable & unfair! You disgraced our home and I have yet again to be the one that loses. I always lose when it comes to you. You get to be comfortable in the home you disgraced and I have to stay in hotels because of your BS I can't make this stuff up!

(Emphasis added.) It is unclear when the text messages were exchanged.[2]

{¶ 13} Wife also explained that in 2017, she and Husband engaged in the legal process to try to terminate their marriage. The two had signed a separation agreement, which was then filed with the domestic relations court. The separation agreement provided that "[Wife] shall pay spousal support to [Husband] for his cell phone bill for 12 months or when employment begins, whichever comes first." Though the signed agreement was filed in the 2017 case, the trial court did not proceed on the agreement after the parties missed a court hearing. The matter was set aside and the parties remained married.

{¶ 14} Wife testified about a proposed decree of divorce her attorney drafted that provided for the division of her and Husband's marital debts and assets. Under Wife's proposed decree, she kept the marital home and would pay Husband $280,254 "as a settlement of all property issues." The first payment of $5,000 was to be made seven days after the court adopted the judgment entry and the funds were "to be used toward [Husband's] moving expenses, obtaining a vehicle, or for any other purpose [Husband] so requires." Thereafter, commencing July 1, 2025 and continuing for 55 consecutive months, Wife was to pay Husband $5,000 per month, followed by a final payment of $254.

{¶ 15} Following Wife's direct examination, Husband was offered the opportunity to cross-examine Wife. Instead, after being reminded by the magistrate that the proceeding was "set for thirty minutes . . . [f]or a noncontested hearing," Husband addressed the magistrate about a variety of issues, including his realization that he

---

2. Wife had taken a "screenshot" of the text messages she and Husband exchanged. The screenshot of the messages indicated the messages had been sent "yesterday," suggesting that the screenshot had been taken the day after the messages were exchanged. However, there was no testimony to indicate the date that the screenshot was taken or the date when the messages were actually exchanged. Though the Exhibit Index List submitted with Wife's exhibits provides a date that the messages were exchanged, the exhibit list is an organizational and administrative document, not a substantive evidentiary filing. It therefore cannot be relied upon to establish the date Husband and Wife exchanged the text messages.

needed to hire an attorney; his failure to meet the court's April 21, 2025 deadline for filing his mandatory disclosures, which he explained was because he had been chased around Michigan and Ohio by a private investigator; his understanding of why dissolution of the marriage had not occurred in the 2017 case ("it's not that [Wife] forgot [the hearing], she just didn't want to go"); the impression he had been given from Wife that the domestic relations court was biased in her favor; and problems he had seeing his adult sons. The magistrate eventually interjected to instruct Husband as to the purpose of the hearing, indicating:

> [Magistrate]: We're set for a thirty minute noncontested hearing. What that means, sir, is you failed to file an answer. I gave you . . . I extended the time for you to file an answer but that has come and gone. So plaintiff is permitted to pursue and [sic] final decree with the Court based on testimony of what the assets and debts of the marriage are. So that is what she presented. . . .
>
> So, what I want to hear from you is whether or not you have reviewed the [proposed] decree of divorce and whether or not you agree to the terms.

{¶ 16} Husband responded that he had reviewed it, and he was in disagreement with the terms proposed by Wife. He proceeded to tell the court about the "sacrifices" he made during the marriage. Husband testified that in 1992, after more than six years with Dow Corning Corporation, he resigned to move to the Detroit area to be with Wife so that the two could get married. Then in 2003, he resigned from a directorship role so that he could move to Boston for Wife's employment with Gillette. Husband indicated that at that time, he had been "approximately twelve months from the vice presidency." In 2006, he lost his job at Gillette when the family moved to Ohio for Wife's work, as his job did not relocate. Husband testified that his "last salary . . . was $111,000 per year annually." Husband admitted that in 2022, he cashed out his pension, though he claimed he put the

funds right back into the marital home and "used the majority of those funds to pay for my travel back and forth to Michigan to see my sons."

{¶ 17} Husband also testified that when Wife started her own company and began to work as an author and consultant, he "provided a lot of services and support for her company." Husband indicated he proofread Wife's book, created product quality tracking systems for shipments of her products, provided quality assessment checks for her brand merchandising, performed banking activities, and shipped product for her. In addition to helping Wife with her business, sometime around 2022, he spent four and one-half weeks in Michigan caring for Wife's father.

{¶ 18} Husband testified he thought Wife's proposal to only pay him $5,000 per month was "extremely unfair." He told the court he was "asking for . . . a[n] equitable division of assets" and requested spousal support. Husband testified he wanted "[a] spousal support amount that exceeds $5,000 because I have to . . . secure residency and transportation and get insurance for my sons. . . . Five thousand dollars a month is not going to suffice, Your Honor." Husband testified that he thought he should be awarded $19,245 a month in spousal support. Husband also indicated he was fine with splitting marital and household debts "fifty, fifty"

{¶ 19} The magistrate again interjected, asking Husband if he believed that he and Wife were incompatible. After Husband indicated, "yes," the magistrate indicated, "All right. So, there is an agreement as to grounds." Wife was not offered the opportunity to cross-examine Husband. Instead, the magistrate adjourned proceedings after hearing a brief summation of the parties' debts from Wife's counsel and denying Husband's request to continue matters so that he could secure counsel.

{¶ 20} On May 14, 2025, the magistrate issued a decision in which it recommended Wife be granted a divorce on the grounds of incompatibility. The

magistrate's decision recommended that Husband be ordered to vacate the marital residence by July 29, 2025, and that Wife pay Husband spousal support in the amount of $15,550 per month for 14 years, or until either party's death, Husband's remarriage, or Husband's cohabitation with another adult in a marital-like relationship. The magistrate recommended that the court retain jurisdiction to modify the amount of spousal support but not the duration. In recommending an award of spousal support for Husband, the magistrate noted that

> spousal support is appropriate and reasonable given the length of the marriage and disparity in incomes. The parties have been married for more than thirty-one (31) years. By Wife's admission and exhibits, her income is approximately $731,000.00 per year. Although Husband is not currently working, he last earned approximately $52,000.00 in 2022. This Magistrate finds that Husband can earn at least $52,000.00 per year.
>
> . . .
>
> This spousal support amount is in addition to Wife's $5,000.00 property settlement payments. Wife is ordered to pay Husband, as set forth in her Proposed Decree. These payments reflect Husband's share of the marital equity in the home and his share of the marital debts. If Wife is unable to retain the home and make the spousal support payments, then Wife must sell the home and pay Husband's remaining property settlement funds in full at closing.

{¶ 21} Wife filed timely objections to the Magistrate's Decision arguing that the magistrate erred in recommending an award of spousal support as Husband had not filed an answer, counterclaim or motion requesting spousal support as required by R.C. 3105.18(B). She further argued that she had relied on Husband's written representation (his text) that he was not seeking spousal support and his failure to file an answer, counterclaim for divorce, or motion seeking to have permanent spousal support or temporary spousal support ordered. Wife contended that Husband's oral request for spousal support in the final moments of the noncontested hearing, after she had

presented her evidence and testimony, was insufficient to raise the issue. Wife further objected to the amount and duration of the spousal support award and objected to the award on the basis that the magistrate failed to consider and apply all the factors set forth in R.C. 3105.18(C). Husband filed a memorandum in opposition to Wife's objections.

{¶ 22} On July 31, 2025, the trial court issued an opinion overruling Wife's objections and adopting the magistrate's decision with a few small modifications. In overruling Wife's objections, the court found that it was proper to award spousal support under R.C. 3105.18(B) as Husband had orally requested spousal support during the hearing. The court concluded that the lateness of the request and Husband's failure to timely file mandatory disclosures did not preclude an award under R.C. 3105.18(B). The court stated, in pertinent part:

> While it is true [Husband] did not comply with the mandatory disclosures, Wife could have asked for Husband to be compelled to provide such information. However, Wife did not do that. In addition, Wife could have asked prior to trial to enforce the agreement that Husband and Wife had signed in 2016 or 2017, or she could have asked whether the combination of the agreement and a lack of written request now would result in the Court summarily denying any suggestion for Wife to pay spousal support to Husband. But Wife did not do that, either, and from what the Court has reviewed, any notes or inclinations expressed by Husband that far back are not enforceable or persuasive now. Moreover, Wife could have asked during the final contested [sic] hearing whether the Magistrate was considering an award of spousal support, and if so, ask for the hearing to be continued so that Wife could perhaps argue that the de facto termination date of the marriage was much sooner than the final hearing date, which could have helped to reduce the duration of spousal support, or perhaps request the appointment of a vocational expert, which could have helped to reduce the amount of spousal support. But that was likewise not done. In any event, it appears Wife made a tactical decision to finish the hearing, hoping and perhaps believing there would be no award of spousal support.

{¶ 23} Though the magistrate had not specifically mentioned the spousal support factors set forth in R.C. 3105.18(C), the trial court nonetheless found that the magistrate had considered such factors. The court proceeded to independently address the factors set forth in R.C. 3105.18(C)(1)(a)-(n) and concluded that an award of spousal support was reasonable and appropriate. However, the court modified the amount of spousal support by $50 a month, lowering Wife's obligation to $15,500 for 14 years, or until either party dies or Husband remarries or lives with another adult in a relationship similar to marriage. The trial court retained jurisdiction over the amount of spousal support, but not the duration of spousal support. The court further modified the date by which spousal support payments were to start and the date by which Husband was required to move out of the marital residence to October 1, 2025.

{¶ 24} On September 25, 2025, the trial court entered the final decree of divorce, which set forth Wife's spousal support obligations as laid out in the court's July 31, 2025 ruling on Wife's objections to the magistrate's decision. The decree of divorce also set forth Wife's obligation to pay Husband $280,254 in installments as a settlement of all property issues between the parties. The first installment, a payment of $5,000, was to be paid within seven days of the decree being filed. Thereafter, commencing October 1, 2025, Wife was ordered to pay Husband $5,000 per month for 55 consecutive months, followed by a final payment of $254. However, if Wife sold the marital residence, the unpaid balance of the property settlement installments were to become due and payable to Husband.

## II. THE APPEAL OF THE SPOUSAL SUPPORT AWARD

{¶ 25} Wife timely appealed, raising two assignments of error relating to the spousal support award. We find the first assignment of error dispositive of the appeal.

{¶ 26} Assignment of Error No. 1:

{¶ 27} THE TRIAL COURT ERRED BY AWARDING SPOUSAL SUPPORT TO APPELLEE-HUSBAND DESPITE HIS FAILURE TO REQUEST IT AS REQUIRED BY R.C. 3105.18(B) AND VIOLATED APPELLANT-WIFE'S DUE PROCESS RIGHTS AS A RESULT.

{¶ 28} In her first assignment of error, Wife argues the trial court erred by awarding Husband spousal support where Husband had not filed a pleading or motion with the court requesting spousal support. Wife contends that Husband's oral request for spousal support in the "final moments" of the noncontested divorce hearing was insufficient to give her notice that he was seeking spousal support. Wife argues that her due process rights were violated by this last-minute request, as she had no prior notice that Husband was seeking spousal support and, in fact, had relied on his text representation that "I don't want any alimony, etc. from you." Wife explained that she would have presented additional evidence or elicited testimony from other witnesses, including Husband, if she had notice that spousal support was at issue.

## A. Standard of Review

{¶ 29} "A trial court has broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case." *Spillane v. Spillane*, 2020-Ohio-5052, ¶ 12 (12th Dist.), citing *Curry v. Curry*, 2017-Ohio-8127, ¶ 15 (12th Dist.). "Absent an abuse of discretion, a spousal support award will not be disturbed on appeal." *Evans v. Evans*, 2025-Ohio-1010, ¶ 9 (12th Dist.). An abuse of discretion "requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably." *Oliver v. Oliver*, 2011-Ohio-6345, ¶ 15 (12th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 30} However, "[c]ourts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule."

- 12 -

*Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. "Therefore, we review a court's errors of law de novo, with further determination of whether that error was harmless." *Evans* at ¶ 10, citing *Johnson* at ¶ 38-39.

**B. Spousal Support and R.C. 3105.18**

{¶ 31} The authority for a trial court to award spousal support is codified in R.C. 3105.18(B). The statute provides, in relevant part, that, "[i]n divorce . . . proceedings, *upon the request of either party* and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party." (Emphasis added.).

{¶ 32} Prior to a 1991 amendment of R.C. 3105.18(B), parties did not have to specifically request spousal support to receive an award of support. However, the current language of R.C. 3105.18(B) "expressly requires that spousal support be requested before it is awarded." *Neal v. Neal*, 1994 Ohio App. LEXIS 4777, *5 (12th Dist. Oct. 24, 1994), citing *Vincent v. Vincent*, 1991 Ohio App. LEXIS 5301, *5 (9th Dist. Nov. 6, 1991). "We must presume that the legislature specifically included the words, 'upon the request of either party,' for a reason." *Evans*, 2025-Ohio-1010, at ¶ 12 (12th Dist.), quoting R.C. 3105.18(B). "Where the language used in a statute is clear and unambiguous, we are to apply the statute 'as written.'" *Id.,* quoting *Karin v. Clark*, 2014-Ohio-1890, ¶ 20 (12th Dist.).

{¶ 33} R.C. 3105.18(B) does not specify how a request for spousal support is to be raised. However, "courts have generally held that such a request must be expressly made so that the party from whom support is sought is aware of the request." *Patti v. Patti*, 2014-Ohio-1156, ¶ 15 (11th Dist.), citing *Woodland v. Woodland*, 2007-Ohio-3503, ¶ 6-21 (7th Dist.). The request does not need to be set forth in a pleading, "as long as it is specifically sought somewhere in the record." *Parker v. Parker*, 2017-Ohio-78, ¶ 12 (9th

Dist.). "An oral request for spousal support made at trial can satisfy R.C. 3105.18(B) *if the nonrequesting party was aware that spousal support would be an issue at trial.*" (Emphasis added.) *Theriot v. Hetrick*, 2020-Ohio-6995, ¶ 29 (8th Dist.), citing *Williams v. Williams*, 2014-Ohio-1044, ¶ 28 (5th Dist.) (finding an oral request for spousal support at trial satisfied R.C. 3105.18[B] where there had previously been a request for spousal support in a dismissed complaint and where temporary spousal support had been heavily contested in prior proceedings).

{¶ 34} However, where the nonrequesting party is unaware that spousal support would be an issue at trial, there are due process concerns with issuing a spousal support award. *See Hetrick* at ¶ 22-33. Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law. "The fundamental requirements of due process are notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Lemasters v. Lemasters*, 2019-Ohio-4395, ¶ 35 (12th Dist.) *See also Sprouse v. Miller*, 2008-Ohio-4384, ¶ 13 (4th Dist.) (noting that "[t]he essence of procedural due process is the right to receive reasonable notice and a reasonable opportunity to be heard"). "Due process of law implies, in its most comprehensive sense, the right of the person affected . . . to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299 (1980). "'The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Althof v. Ohio State Bd. of Psychology*, 2007-Ohio-1010, ¶ 19 (10th Dist.), quoting *Gonzales v. United States*, 348 U.S. 407, 414, fn. 5 (1955). *See also Meilen v. Meilen*, 2013-Ohio-4883, ¶ 24 (10th Dist.), quoting *United States v. Texas*, 523 F.Supp. 703, 722 (E.D.Tex. 1981) ("'A party must have actual or constructive knowledge of the scope of

proceedings, as well as an adequate opportunity to present evidence on all issues embraced therein'").

{¶ 35} "'The inquiry as to what constitutes due process depends on the facts of each case.'" *Hetrick* at ¶ 24, quoting *Huntington Natl. Bank v. 5777 Grant, L.L.C.*, 2014-Ohio-5154, ¶ 16 (8th Dist.). *See also Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. Edn.*, 1994-Ohio-354, ¶ 8. Accordingly, the pertinent question presented in this case is whether Wife was aware that spousal support was going to be an issue at trial.

{¶ 36} We find that there is nothing in the record to show that Wife was or should have been aware that spousal support was an issue to be tried at the May 12, 2025 noncontested divorce hearing. Prior to the May 12, 2025 hearing, Husband had not filed an answer, counterclaim, or motion in which he sought spousal support. The issue of spousal support had not been discussed at the March 21, 2025 scheduling conference. The first time Wife was made aware Husband was seeking spousal support occurred at the noncontested hearing, *after* Wife had concluded her testimony and evidence addressing why a divorce should be granted and how debts and assets should be divided. Husband waited to request spousal support until near the end of the 30-minute hearing. Wife had no notice before trial that Husband planned to raise the issue of spousal support and she therefore had no reason to gather evidence relevant to the factors set forth in

R.C. 3105.18(C) or present evidence in opposition to spousal support.[3] Simply put, Wife did not have a reasonable opportunity to know of the claim to be raised by the opposing party or the opportunity to meet Husband's claim for spousal support with evidence in opposition.[4]

{¶ 37} In overruling Wife's objections to the magistrate's decision recommending an award of spousal support, the trial court suggests that Wife "could have" and "should have" done more to oppose the court's consideration of spousal support and done more to present evidence in opposition to spousal support. The court suggested Wife could have asked whether the magistrate was going to consider spousal support, asked for the hearing to be continued, moved the court to compel mandatory disclosures from Husband, asked the court to consider an earlier termination date for the marriage as a potential way of reducing the duration of support; and/or asked for the appointment of a vocational expert to help reduce the amount of spousal support. We find that the court's attempt to shift the burden to Wife under the circumstances presented in this case—where the first request for spousal support is made in the closing minutes of an uncontested divorce hearing—are unfair and unreasonable. Wife was without notice that

---

3. R.C. 3105.18(C)(1) provides that a trial court should consider the following factors in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support: (a) the income of the parties; (b) the earning abilities of the parties; (c) the parties' ages and physical, mental, and emotional conditions; (d) the parties' retirement benefits; (e) the duration of the marriage; (f) whether a party who is a custodian of a minor child is able to seek employment outside the home; (g) the standard of living established during the marriage; (h) the parties' level of education; (i) the assets and liabilities of the parties, including any court-ordered payments by the parties; (j) the contribution of each party to the education, training, or earning ability of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so the spouse will be qualified to obtain appropriate employment; (l) the tax consequences of an award of spousal support; (m) the lost income production capacity of either party that resulted from the party's marital responsibilities; and (n) any other factor the court expressly finds to be relevant.

4. We note that we do not view the undated text messages exchanged between the parties (Exhibit 28) or the 2017 separation agreement as evidence that would automatically preclude Husband from seeking spousal support. Rather such evidence might be relevant considerations for the trial court in determining the reasonableness and appropriateness of a spousal support award under R.C. 3105.18(C).

such actions would be required.

{¶ 38} Once Husband requested spousal support, thereby interjecting a contested issue into an uncontested hearing, the trial court should have continued the matter and set a hearing on the issue of spousal support. This would have not only provided Wife with notice that the court was considering an award of spousal support, but it would have provided her with the opportunity to gather witnesses and documentary evidence pertinent to the issue of spousal support.

{¶ 39} A continuance would have also protected Husband's right to raise a contested issue and meaningfully participate in the divorce proceedings, even though he did not file an answer. Pursuant to Civ.R. 75(F), "[t]he provisions of Civ.R. 55 [default judgment] shall not apply in actions for divorce." As such, "a party may still appear at the final hearing and present evidence regardless of that party's failure to answer the complaint." *Franklin v. Franklin*, 2012-Ohio-1814, ¶ 8 (10th Dist.). *See also See Rue v. Rue*, 2006-Ohio-5131, ¶ 63 (2d Dist.); *Wilkes v. Wilkes*, 2025-Ohio-1031, ¶ 12 (10th Dist.). A party who has not filed an answer may contest one or more issues in the divorce. *Rue* at ¶ 64. Such issues may include how the property of the parties is divided, the appropriateness of an order of spousal support, and the allocation of parental rights and responsibilities, including child support. *See* Civ.R. 75(F)(1); *Rue*, 2026-Ohio-5131 (allocation of parental rights). As the Second District explained,

> [T]he fact that a divorce litigant has not filed an answer does not prevent the litigant from contesting one or more issues in the divorce. In the occasional case, this may mean that a case set for hearing on the noncontested docket may have to be reset for the contested docket because the nonanswering, and hitherto unassertive, defendant shows up at the hearing intending to contest one or more issues.

*Id.* at ¶ 64.

{¶ 40} Given the circumstances of this case, where the magistrate allotted only 30

minutes for an uncontested divorce case, Husband had not filed an answer or other pleading, and Husband waited until the final minutes to raise a contested issue of divorce, we find that the trial court erred in issuing a spousal support award to Husband. Wife's due process rights were infringed as she was not given reasonable notice or the opportunity to be heard in a meaningful manner on the issue of spousal support. The trial court should have continued the proceeding in progress and set the matter for a hearing on the issue of spousal support. We therefore sustain Wife's first assignment of error.

{¶ 41} Wife's second assignment of error, in which she challenges whether there was sufficient evidence presented to support the award of spousal support, is rendered moot by our resolution of the first assignment of error. *See* App.R. 12(A)(1)(c).

### III. CONCLUSION

{¶ 42} The judgment of the trial court ordering Wife to pay $15,500 in spousal support to Husband for 14 years is hereby reversed and the matter is remanded to the trial court to hold an evidentiary hearing on the contested issue of spousal support. Both Wife and Husband shall be permitted to present testimony and evidence relevant to the spousal support factors set forth in R.C. 3105.18(C). On remand, the trial court shall determine whether an award of spousal support is appropriate and reasonable, and, if so, determine the nature, amount, terms of payment, and duration of spousal support. In all other respects, the judgment of the trial court is affirmed.

{¶ 43} Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings.

BYRNE, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed to the extent that it included an award of spousal support. The matter is remanded to the trial court to hold an evidentiary hearing on the contested issue of spousal support. Both appellant-wife and appellee-husband shall be permitted to present testimony and evidence relevant to the spousal support factors set forth in R.C. 3105.18(C). On remand, the trial court shall determine whether an award of spousal support is appropriate and reasonable, and, if so, determine the nature, amount, terms of payment, and duration of spousal support. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed to appellee.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Melena S. Siebert, Judge*